SEAN F. FORLENZA, ESQUIRE
The Law Office of Sean F. Forlenza, Esq.
1043 Hughes Drive
Hamilton, NJ 08690
(609) 638-0748

CARL J. MAYER, ESQUIRE
The Mayer Law Group
174 Nassau Street, Suite 414
Princeton, NJ 08542
(609) 921-0253

TED M. ROSENBERG, ESQUIRE
The Rosenberg Law Firm
321 New Albany Road
P.O. Box 97
Moorestown, NJ 08057
(856) 608-9999
(856) 235-8196 Fax

Attorneys for Plaintiff, Debra A. Silver, on
behalf of herself and those similarly situated

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBRA A. SILVER, on behalf of herself and those similarly situated, <br><br>                    Plaintiff, <br><br>      v. <br><br> PEP BOYS - MANNY, MOE & JACK OF DELAWARE, INC.; JANE AND JOHN DOES 1-10, individually and as owners, officers, directors, founders, managers, agents, employees and/or representatives of PEP BOYS - MANNY, MOE & JACK OF DELAWARE, INC.; and XYZ ENTITIES 1-10, <br><br>                    Defendants. | Civil Action No.: 3:17-cv-00018-FLW-LHG <br><br>    Honorable Freda L. Wolfson <br>    Honorable Lois H. Goodman <br><br><br> **SECOND AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff Debra A. Silver ("Plaintiff" or "Ms. Silver"), by and through her undersigned

counsel, brings this action on behalf of herself and those similarly situated, pursuant to Fed. R.

Civ. P. 23, et seq., against Defendant Pep Boys - Manny, Moe & Jack of Delaware, Inc.,

("Defendant" or "Pep Boys"), Jane and John Does 1-10, individually and as owners, officers, directors, founders, managers, agents, employees and/or representatives of Pep Boys, and XYZ Entities 1-10. Plaintiff and all other putative class members, upon information and belief, allege as follows:

PRELIMINARY STATEMENT

1.      Consumers rely on their vehicles to go to work, pursue their educational goals and provide for their families. Furthermore, consumers are required to maintain, repair and service their vehicles to ensure access to the daily necessities of life. Moreover, consumers want an honest and affordable price for the auto parts that they need and buy which enables them to save money and to make their financial ends meet. Ms. Debra A. Silver, a single, working mom, is such a consumer. A loyal Pep Boys customer for several years, Ms. Silver placed her trust in her local Pep Boys' store's service department to provide her with the auto parts that she needed at Defendant's lowest prices.

2.      Ms. Silver believed that her local Pep Boys' store's service department provided her with the auto parts that she needed at the lowest possible prices because she received a Pep Boys' discount that lowered the prices for these auto parts. This is because Pep Boys operated, and is still operating, a two-tiered pricing scheme that charges its website's customers one set of prices, their website's advertised prices for auto parts, but charged Ms. Silver, and similarly situated consumers, a second set of prices, their stores' service departments' set of prices that are charged out at a premium, resulting in percentage price increases ranging from 13% to 51%, over their website's advertised prices, for the same exact auto parts and exclusive of any labor charges to install these auto parts. Pep Boys concealed, and is still concealing, this two-tiered pricing scheme through its failure to disclose this fact to Ms. Silver, and similarly situated consumers, and

through its use of a discount applied to Ms. Silver's final bill to make it appear that she, and similarly situated consumers, received the lowest possible prices for these auto parts. Pep Boys' two-tiered pricing scheme is not only inconsistent with its public statements regarding its code of ethics and price matching policies, it violates New Jersey law.

<u>PROCEDURAL HISTORY</u>

3.      By way of background, this matter was originally filed by the Plaintiff on November 21, 2016 in the Superior Court of New Jersey, Law Division under docket number MER-L-2305-16. Shortly thereafter, on or about November 28, 2016, the Plaintiff filed the First Amended Class Action Complaint and Jury Demand. The First Amended Class Action Complaint contained only minor clerical corrections.

4.      On or about January 3, 2017, Pep Boys filed its Notice for Removal pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1441, 1446, and/or 1453, <u>et seq</u>.

5.      On January 24, 2017, Pep Boys filed both a Notice of Motion to Compel Arbitration and Dismiss the Case and a Notice of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6). As part of the former motion, Pep Boys included a Declaration of Greg Russ, Defendant's Vice President of Service Operations.

6.      On May 22, 2017, the Honorable Freda L. Wolfson entered an Order administratively terminating both of Pep Boys' motions. Judge Wolfson ordered that the parties engage in sixty (60) days of arbitration related discovery. At the end of the arbitration discovery period, Pep Boys was permitted an additional forty-five (45) days to refile either or both of its prior motions. Due to limited discovery conducted on the issue of arbitration, Pep Boys decided

to withdraw its arbitration defense as to Ms. Silver.  The issue of whether Pep Boys' arbitration defense is waived to unnamed members of the proposed class is subject to Plaintiff's Fed. R. Civ. P. 30(a)(1) and 30(b)(6) deposition requests that were served upon the Defendant.

<u>NATURE OF THE ACTION</u>

7.    Plaintiff brings this action on behalf of a statewide New Jersey class of customers who, at any time from six years prior to November 22, 2016 through the present, purchased automobile parts and/or accessories from a New Jersey based Pep Boys Service Center and were charged a higher price for the part and/or accessory greater than Pep Boys' lowest advertised online price for the part.  Pep Boys has published and continues to publish a Service Department Code of Ethics ("Code").[1] The Code unequivocally affirms that "[s]ervice pricing <u>must</u> conform with the Pep Boys printed retail prices or Mitchell pricing if no Pep Boys pricing is stated." (<u>emphasis added</u>).  *See* Exhibit A – Code.[2] Pep Boys has consistently violated its Code by charging higher prices for parts sold through its service departments than for the same parts advertised for sale for lower printed retail prices stated on its website.

8.    This is a consumer class action against Pep Boys.  Pep Boys' failure to honor its advertised price including its affirmative misrepresentation that its service pricing conform with its printed retail pricing violates various provisions of the New Jersey Consumer Fraud Act, ("CFA"), <u>N.J.S.A.</u> 56:8-1 <u>et</u> <u>seq.</u>, the Truth-In Consumer Contract, Warranty and Notice Act, ("TCCWNA"), <u>N.J.S.A.</u> 56:12-14 <u>et</u> <u>seq.</u>, and the New Jersey Automotive Repair Regulations ("Repair Regulations"), <u>N.J.A.C.</u> 13:45A-26C.2(a)1, 13:45A-26C.2(a)5 and 13:45A-26C.2(a)13. Additionally, Pep Boys has breached the contracts and/or agreements between it and the Plaintiff

---

[1]*See* https://www.pepboys.com/docs/pdf/Q4_2011PressKit_FNL.pdf (page 8 (of 14), number 9).
[2] *See* page 9 (of 50), number 9, within attached exhibit PDF document counter.

and the putative class and Pep Boys has been unjustly enriched at the expense of the Plaintiff and the putative class.

9.      Through her CFA and Repair Regulations claims, the Plaintiff seeks damages for herself and on behalf of the putative class, and injunctive relief requiring Pep Boys to cease using deceptive practices in violation of the CFA.

10.     Through her TCCWNA claims, the Plaintiff seeks damages for herself and on behalf of the putative class, and injunctive relief barring Pep Boys from further violations of the TCCWNA.

11.     Through her breach of contract claim, the Plaintiff seeks damages for herself and on behalf of the putative class, and injunctive relief barring Pep Boys from further breaches of contract.

12.     Through her unjust enrichment claim, the Plaintiff seeks damages for herself and on behalf of the putative class, and injunctive relief barring Pep Boys from further unlawful actions that result in it being unjustly enriched at the expense of its customers.

<u>PARTIES</u>

13.     Plaintiff Debra A. Silver is an individual residing in Plainsboro, Middlesex County, New Jersey.

14.     Defendant Pep Boys is a Delaware corporation with a principal place of business located at 3111 West Allegheny Avenue, Philadelphia, Pennsylvania 19132.  Upon information and belief, Pep Boys operates at least 45 of its stores in New Jersey.

15.     Jane and John Does 1 through 10 are fictitious individuals meant to represent the agents, servants, employees, and/or representatives of Pep Boys who have been involved in the

conduct that gives rise to this Complaint, but are heretofore unknown to Plaintiff. As these defendants are identified, Plaintiff shall amend the Complaint to include them.

16.    XYZ Entities 1 through 10 are fictitious entities (e.g., corporations, limited liability companies, proprietorships, etc.) meant to represent any additional business entities who have been involved in the conduct that gives rise to the Complaint, but are heretofore unknown to Plaintiff. As these Defendants are identified, Plaintiff shall amend the Complaint to include them.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million, exclusive of interests and costs, and is a class action in which some members of the Class are citizens of states different than Defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

18.    This Court has personal jurisdiction over Defendant because it does substantial business in New Jersey. Defendant has sufficient minimum contacts with the state of New Jersey and intentionally avails itself of the consumers and markets within the state of New Jersey through the promotion and sales of its products and services.

19.    Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b)(2).

## SUBSTANTIVE ALLEGATIONS

20.    At all relevant times, Pep Boys operated and currently operates a website, www.pepboys.com, that allows customers to purchase products for in-store or home delivery as well as to schedule service appointments at one of its physical locations.

21.     At all relevant times, customers can schedule a service appointment by going to Pep Boys' website or by going to or calling one of the Pep Boys' store locations in New Jersey.

22.     Upon information and belief, anytime a customer utilizes the Pep Boys' service department, that customer is charged for the part(s) purchased and labor costs for installation of these parts.

23.     On or about September 23, 2015, Plaintiff visited Pep Boys' Princeton store located at 3505 Brunswick Pike, West Windsor, New Jersey.  The Plaintiff's purpose for visiting the store was to have her 2006 Kia Sedona repaired.

24.     On or about September 25, 2015, Pep Boys' Princeton service department called Plaintiff and explained to her that she needed new rear disc brake rotors.  Pep Boys offered to sell Plaintiff a pair of Prostop Rear Disc Brake Rotors ("Brake Rotors") for $173.56 exclusive of labor. Plaintiff agreed to buy the parts from Pep Boys.

25.     The Plaintiff subsequently went to the Pep Boys' Princeton location to pick up her vehicle and pay for the work done.  Pep Boys' Princeton service department applied a "discount" that reduced the cost of the Brake Rotors from $173.56 to $147.53.  This price did not include the $159.00 for labor that was additionally charged.  *See* Exhibit B – Service Work Order and Receipt.

26.     Upon information and belief, Pep Boys advertised a lower price on its website for the Brake Rotors than what its service department ultimately charged the Plaintiff on September 25, 2015.  *See* Exhibit C – Pep Boys' Website Screenshot.

27.     As the Plaintiff paid for labor in addition to the parts, the difference between the price charged for the Brake Rotors online and the post-discount price charged for the Brake Rotors in-store represents a hidden and/or disguised fee of $55.55 that Pep Boys charged Plaintiff.

28.     Upon information and belief, Pep Boys utilizes a practice of routinely charging customers who use its service department a price for vehicle part(s) that is greater than its lowest advertised price for the same part(s) on its website ("price differential").  *See* Exhibit D – Price Differential Chart.

29.     Additionally, Pep Boys affirmatively misrepresented on its Code that its "[s]ervice pricing must conform with the Pep Boys printed retail prices or Mitchell pricing if no Pep Boys pricing is stated."  On information and belief, Pep Boys advertises a price for less money on its website for a part(s) than the price that its service department will charge a customer for the same part(s).

30.     On or about April 9, 2016, the Plaintiff visited the Pep Boys' Princeton store's service department to have work performed on her vehicle.  On or about April 11, 2016, a representative from Pep Boys called Plaintiff and advised her of the work that needed to be done on her vehicle.  That work consisted of the following parts at the following prices:

     a)    one (1) ProCool New Water Pump for $141.88;
     b)    a pair of Front Struts for $605.64;
     c)    a pair of Front Strut Mounts for $281.20; and
     d)    one (1) Sway Bar Bushing for $18.41.

These prices were exclusive of labor.  The Plaintiff agreed to buy the parts from Pep Boys.

31.     The Plaintiff subsequently went to the Pep Boys' Princeton location to pick up her vehicle and pay for the work done.  Pep Boys' Princeton's store's service department applied a "discount" that reduced the costs of the parts as follows:

     a)    one (1) ProCool New Water Pump for $106.41;
     b)    a pair of Front Struts for $454.23;
     c)    a pair of Front Strut Mounts for $210.91; and

d)      one (1) Sway Bar Bushing for $13.82.

Therefore, the Plaintiff was charged $785.37 for the parts.  This price did not include the approximately $584.33 for labor that was additionally charged.  *See* Exhibit E – Service Work Order and Receipt.

32.      Upon information and belief, Pep Boys advertised a lower price on its website for the parts listed in paragraph 31 supra than what its service department ultimately charged the Plaintiff on or about April 11, 2016.  *See* Exhibit F – Pep Boys' Website Screenshots.

33.      As the Plaintiff paid for labor in addition to the parts, the difference between the in-store post-discount prices charged for the parts listed in paragraph 31 supra and the online prices charged for the same parts represents a hidden and/or disguised fee of $20.42, $228.25, $106.93, and $1.83, respectively, that Pep Boys charged Plaintiff.

34.      Upon information and belief, Pep Boys utilizes a practice of routinely charging customers who use its service department a price for vehicle part(s) that is greater than its lowest advertised price for the same part(s) on its website.  *See* Exhibit G – Price Differential Chart.

35.      Additionally, Pep Boys affirmatively misrepresents on its Code that its "[s]ervice pricing must conform with the Pep Boys printed retail prices or Mitchell pricing if no Pep Boys pricing is stated."  On information and belief, Pep Boys advertises a price for less money on its website for a part(s) than the price that its service department will charge a customer for the same part(s).

36.      On or about May 15, 2016, the Plaintiff visited Pep Boys' Princeton store's service department to have work performed on her vehicle.  On or about May 16, 2016, a representative from Pep Boys called Plaintiff and advised her of the work that needed to be done on her vehicle.

Pep Boys offered to sell plaintiff a BWD Brake Light Switch ("Brake Light Switch") for $33.13 exclusive of labor.  Plaintiff agreed to buy the part from Pep Boys.

37.    The Plaintiff subsequently went to Pep Boys' Princeton location to pick up her vehicle and pay for the work done.  Pep Boys' Princeton's service department applied a "discount" that reduced the cost of the Brake Light Switch from $33.13 to $28.16.  This price did not include the labor that was additionally charged.  *See* Exhibit H – Service Work Order and Receipt.

38.    As the Plaintiff paid for labor in addition to the parts, the difference between the price charged for the Brake Light Switch online and the post-discount price charged for the Brake Light Switch in-store represents a hidden and/or disguised fee of $11.17 that Pep Boys charged Plaintiff.

39.    Upon information and belief, Pep Boys utilizes a practice of routinely charging customers who use its service department a price for vehicle part(s) that is greater than its lowest advertised price for the same part(s) on its website.  *See* Exhibit I – Pep Boys' Website Screenshot. *See* Exhibit J – Price Differential Chart.  Since Pep Boys' customers pay labor charges for using its service department, this price differential simply represents an additional disguised and/or undisclosed fee to the consumer.

40.    Pep Boys affirmatively misrepresented on its Code that its "[s]ervice pricing must conform with the Pep Boys printed retail prices or Mitchell pricing if no Pep Boys pricing is stated."  On information and belief, Pep Boys advertises a price for less money on its website for a part(s) than the price that its service department will charge a customer for the same part(s).

41.    Furthermore, Pep Boys offers a "Price Match Policy".  See https://www.pepboys.com/customer_care/policies/price_match/.  That policy states that Pep Boys,

for retail merchandise ". . . will match any local competitor's advertised or every-day price, on any comparable merchandise normally stocked as active in our stores' inventory or outside purchase, within 30 days of purchase with the original receipt."  (emphasis added).

42.    By stating that it would match any local competitor's advertised prices for any merchandise it stocked, Pep Boys impliedly represented that it would match its own prices for merchandise purchased from its website to merchandise sold through its service departments.

43.    Defendant never disclosed to Plaintiff either over the phone or in person, that the exact same parts were available to her on Defendant's website for a substantial discount than what Pep Boys' service department charged her.  In fact, Defendant's use of a "discount" on the final bill as well as its "Price Match Policy" deceived Plaintiff into thinking she received Pep Boys' lowest prices for the parts that she purchased.

## CLASS ACTION ALLEGATIONS

44.    Plaintiff seeks relief in her individual capacity and seeks to represent a class consisting of all others who are similarly situated.  Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiff seeks certification of a class initially defined as follows:

All customers in New Jersey who from the six years preceding November 21, 2016 until the final disposition of this case ("Class Period"), purchased auto parts from Pep Boys' service departments and were charged a higher price than Defendant's lowest advertised online price in violation of Defendant's publicly stated Code.

45.    Excluded from the Class are Defendant and its subsidiaries and affiliates, Defendant's executives, board members, legal counsel, the judges, and all other court personnel to whom this case is assigned, and their immediate families.

46.     Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division into subclasses after she has had an opportunity to conduct discovery.

47.     Numerosity.  Fed. R. Civ. P. 23(a)(1).  The potential members of the Class as defined are so numerous that joinder of all members is unfeasible and not practicable.  While the precise number of Class members has not been determined at this time, Plaintiff is informed and believes that thousands or millions of consumers have purchased parts within the Class definition.

48.     Commonality.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members.  These common questions of law and fact include, without limitation:

a.     Whether Pep Boys falsely and/or misleadingly misrepresented that its "[s]ervice pricing must conform with the Pep Boys printed retail prices or Mitchell pricing if no Pep Boys pricing is stated.";

b.     Whether Pep Boys' misrepresentations are likely to deceive reasonable consumers;

c.     Whether Pep Boys violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq., ("CFA" or "Consumer Fraud Act");

d.     Whether Pep Boys violated the Truth-In-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14, et seq., ("TCCWNA");

e.     Whether Pep Boys' actions constitute a breach of contract;

f.     Whether Pep Boys was unjustly enriched by its conduct;

g.      Whether Pep Boys violated the New Jersey Automotive Repair Regulations, N.J.A.C., 13:45A-26C.2(a)1, 13:45A-26C.2(a)5 and 13:45A-26C.2(a)13, each of which is a per se violation of the Consumer Fraud Act, N.J.S.A. 56:8-2.

h.      The nature of the relief, including equitable relief, to which Plaintiff and Class members are entitled.

49.      Typicality. Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of the claims of the Class.  Plaintiffs and all Class members were exposed to uniform practices and sustained injury arising out of and caused by Defendant's unlawful conduct.

50.      Adequacy of Representation.  Fed. R. Civ. P. 23(a)(4).  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff's Counsel is competent and experienced in litigating class actions.

51.      Superiority of Class Action.   Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the Class is impracticable.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.

52.      Injunctive and Declaratory Relief.  Fed. R. Civ. P. 23(b)(2).  Pep Boys' misrepresentations and omissions of material facts are uniform to all members of the Class.  Pep Boys has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or declaratory relief is appropriate with respect to the Class as a whole.

## COUNT ONE

### (FIRST VIOLATION OF THE CFA)

53.     Plaintiff, on behalf of herself and all others similarly situated, incorporates by reference and realleges paragraphs 1-52.

54.     The CFA prohibits inter alia:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise[.]  N.J.S.A. 56:8-2.

55.     At all relevant times, Pep Boys was a "person" within the meaning of N.J.S.A. 56:8-1(d).

56.     At all relevant times, Pep Boys' sale(s) of vehicle parts and accessories constituted "merchandise" within the meaning of N.J.S.A. 56:8-1(c).

57.     At all relevant times, Pep Boys' marketing, advertising, sales and distribution of vehicle parts and accessories meets the definition of "advertising" in N.J.S.A. 56:8-1(a).

58.     At all relevant times, Pep Boys' marketing, advertising, sales and distribution of vehicle parts and accessories meets the definition of "sale" in N.J.S.A. 56:8-1(e).

59.     As described in detail above, Pep Boys falsely, deceptively, unfairly, unconscionably, and fraudulently mislead the Plaintiff and the putative Class in violation of the CFA by failing to disclose that it charges its service department customers the price differential mentioned supra.  That is Pep Boys operated, and currently operates, essentially a two-tiered pricing structure that allows its service departments to charge its customers a significant premium for a part or accessory over Pep Boys' lowest advertised online price for that part.

60.     At all relevant times, this price differential represented and currently represents a disguised and/or undisclosed fee to the consumer.

61.     These disguised and/or undisclosed fees are violative of the CFA as they were never disclosed to the class members prior to the sales.

62.     The Plaintiff suffered ascertainable losses of money, including, but not limited to, the aforementioned price differential in the amounts of $55.55, $357.43, and $11.17, respectively, for each service visit.  The Plaintiff and the members of the putative Class are aggrieved consumers as a result of, but not limited to, the foregoing violations and losses.

<u>COUNT TWO</u>
(SECOND VIOLATION OF THE CFA)

63.     Plaintiff, on behalf of herself and all others similarly situated, incorporates by reference and realleges paragraphs 1-62.

64.     The CFA prohibits <u>inter alia</u>:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise[.]  <u>N.J.S.A.</u> 56:8-2.

65.     At all relevant times, Pep Boys was a "person" within the meaning of <u>N.J.S.A.</u> 56:8-1(d).

66.     At all relevant times, Pep Boys' sale(s) of vehicle parts and accessories constituted "merchandise" within the meaning of <u>N.J.S.A.</u> 56:8-1(c).

67.     At all relevant times, Pep Boys' marketing, advertising, sales and distribution of vehicle parts and accessories meets the definition of "advertising" in <u>N.J.S.A.</u> 56:8-1(a).

68.     At all relevant times, Pep Boys' marketing, advertising, sales and distribution of vehicle parts and accessories meets the definition of "sale" in <u>N.J.S.A.</u> 56:8-1(e).

69.     At all relevant times, Pep Boys engaged in unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations in its interactions with Plaintiff in violation of the CFA since it promotes and affirmatively represented to the Plaintiff and the putative Class that its "[s]ervice pricing must conform with the Pep Boys printed retail price or Mitchell pricing if no Pep Boys pricing is stated."  As mentioned <u>supra</u>, this policy is contained within the Code.

70.     The posting of a document containing this language in inherently deceptive as it misleads an average consumer into believing that the Pep Boys' service department was bound to give them Pep Boys' lowest advertised price for the part or accessory when that was not in fact the case.

71.     The language contained in the Pep Boys' Code is an affirmative misrepresentation of a material fact in violation of the CFA.

72.     At all relevant times, Pep Boys charged the price differential to its customers who purchased the parts through its service departments.

73.     The Plaintiff suffered ascertainable losses of money, including, but not limited to, the aforementioned price differential in the amounts of $55.55, $357.43, and $11.17, respectively, for each service visit.  The Plaintiff and the members of the putative Class are aggrieved consumers as a result of, but not limited to, the foregoing violations and losses.

<u>COUNT THREE</u>
(THIRD VIOLATION OF THE CFA)

74.     Plaintiff, on behalf of herself and all others similarly situated, incorporates by reference and realleges paragraphs 1-73.

75.     At all relevant times, Pep Boys engaged in unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations in its interactions with Plaintiff in violation of the CFA since it promotes a price matching policy wherein it ". . . will match any competitor's advertised or every-day price, on any comparable merchandise normally stocked as active in our stores' inventory or outside purchase, within 30 days of purchase with the original receipt."

76.     The posting of a document containing this language is inherently deceptive as it misleads an average consumer into believing that if Pep Boys will match a competitor's price, it is most certainly matching its own in-store and/or online price.  Also, the price match is inherently deceptive as it omits the material fact that Pep Boys does not price match in its service department to its lowest price as set forth on its website or in the store for the same merchandise.

77.     The Price Match Policy is inherently deceptive under the CFA as a customer is misled into believing they are receiving Pep Boys' lowest price for the part and that the customer should not have to ask Pep Boys to "price match" Pep Boys' lowest advertised price.

78.     At all relevant times, Pep Boys charged the price differential to its customers who purchased the parts through its service department.

79.     The Plaintiff suffered ascertainable losses of money, including, but not limited to, the aforementioned price differential in the amounts of $55.55, $357.43, and $11.17, respectively, for each service visit.  The Plaintiff and the members of the putative Class are aggrieved consumers as a result of, but not limited to, the foregoing violations and losses.

## COUNT FOUR

### (Violations of the Repair Regulations)

80.    Plaintiff, on behalf of herself and all others similarly situated, incorporates by reference and realleges paragraphs 1-79.

81.    The Repair Regulations, N.J.A.C. 13:45A-26C.1 et seq., prohibit automotive repair dealers from deceptive practices in connection with providing automotive repair services to consumers.  Defendant has engaged in deceptive practices in its interactions with Plaintiff in violation of the Repair Regulations, N.J.A.C. 13:45A-26C.2(a)1, 13:45A-26.2(a)5 and 13:45A-26C.2(a)13.  Each of these violations is a per se violation of the CFA, including without limitation:

a.    Defendant's failure to disclose its two-tiered price differential in which its service department failed to provide the Plaintiff with Defendant's lowest advertised online price for the part(s) purchased;

b.    Defendant's practice of applying discounts for the part(s) on the Plaintiff's final bill was a deceptive and unconscionable commercial practice that reinforced Plaintiff's impression that she was receiving Defendant's lowest advertised price for the parts and induced her to agree and to pay the post-discount part prices when in fact she was paying a substantial premium over the lowest advertised online price for these same parts.

c.    Defendant's Code is an untrue statement which the Defendant knew to be untrue because it sold its service department parts at a premium over the same parts sold through its website that were advertised for less.

82.    The Plaintiff suffered ascertainable losses of money, including, but not limited to, the aforementioned price differential in the amounts of $55.55, $357.43, and $11.17, respectively,

for each service visit.  The Plaintiff and the members of the putative Class are aggrieved consumers as a result of, but not limited to, the foregoing violations and losses.

COUNT FIVE

(First Violation of the TCCWNA)

83.    Plaintiff, on behalf of herself and all others similarly situated, incorporates by reference and realleges paragraphs 1-82.

84.    Pep Boys' contracts, advertisements, website and/or agreements as given to Plaintiff and others similarly situated are consumer notices and/or contracts subject to TCCWNA.

85.    Pep Boys is a "seller" within the meaning of N.J.S.A. 56:12-15.

86.    TCCWNA, at N.J.S.A. 56:12-15, prohibits any seller from offering, entering into, giving, or displaying a written consumer notice and/or contract that violates a clearly established right of the consumer or responsibility of the seller as established by New Jersey or federal law.

87.    The right of a consumer to be free from a disguised or hidden fee is a clearly established right under the CFA.

88.    The responsibility of the seller not to use any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omissions is a clearly established responsibility under N.J.S.A. 56:8-1 et seq.

89.    Defendant's contracts, website, advertisements and/or agreements violate the TCCWNA by failing to disclose the existence of the price differential, i.e., Pep Boys' practice of using its service department to charge customers amounts for parts in excess of Pep Boys' lowest advertised online price for that part.

90.     The Plaintiff suffered ascertainable losses of money, including, but not limited to, the aforementioned price differential in the amounts of $55.55, $357.43, and $11.17, respectively, for each service visit.  The Plaintiff and the members of the putative Class are aggrieved consumers as a result of, but not limited to, the foregoing violations and losses.

<u>COUNT SIX</u>

(Second Violation of the TCCWNA)

91.     Plaintiff, on behalf of herself and all others similarly situated, incorporates by reference and realleges paragraphs 1-90.

92.     Pep Boys' Code as published on its website is a consumer notice subject to TCCWNA.

93.     Pep Boys is a "seller" within the meaning of <u>N.J.S.A.</u> 56:12-15.

94.     TCCWNA, at <u>N.J.S.A.</u> 56:12-15, prohibits any seller from offering, entering into, giving or displaying a written consumer notice and/or contract that violates a clearly established right of the consumer or responsibility of the seller as established by New Jersey or federal law.

95.     As described in detail above, Pep Boys falsely and affirmatively misrepresents that its "[s]ervice pricing must conform with the Pep Boys printed retail price or Mitchell pricing if no Pep Boys pricing is stated."

96.     The responsibility of the seller not to use any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omissions is a clearly established responsibility under <u>N.J.S.A.</u> 56:8-1 <u>et</u> <u>seq</u>.

97.    Pep Boys' contracts, website, advertisements and/or agreements violate the TCCWNA by falsely affirmatively misrepresenting through its Code that its "[s]ervice pricing must conform with the Pep Boys printed retail price or Mitchell pricing if no Pep Boys pricing is stated."  As mentioned supra, this policy is contained within the Code.

98.    The Plaintiff suffered ascertainable losses of money, including, but not limited to, the aforementioned price differential in the amounts of $55.55, $357.43, and $11.17, respectively, for each service visit.  The Plaintiff and the members of the putative Class are aggrieved consumers as a result of, but not limited to, the foregoing violations and losses.

COUNT SEVEN
(Third Violation of the TCCWNA)

99.    Plaintiff, on behalf of herself and all others similarly situated, incorporates by reference and realleges paragraphs 1-98.

100.    Pep Boys' "price matching policy" as published on its website is a consumer notice subject to TCCWNA.

101.    Pep Boys is a "seller" within the meaning of N.J.S.A. 56:12-15.

102.    At all relevant times, Pep Boys engaged in unconscionable commercial practices, deception, fraud, false pretenses and misrepresentations in its interactions with Plaintiff in violation of the CFA, and therefore the TCCWNA, since it promotes a price matching policy wherein it ". . . will match any competitor's advertised or every-day price, on any comparable merchandise normally stocked as active in our stores' inventory or outside purchase, within 30 days of purchase with the original receipt."

103.    The posting of documents containing this language is inherently deceptive as it misleads an average consumer into believing that Pep Boys was already giving them its lowest

price for a product and that they would match the competitor's price if the competitor has a lower price.

104.    The Price Match Policy is inherently deceptive under the CFA, and therefore the TCCWNA, as a customer is misled into believing that they are receiving Pep Boys' lowest price for the part and that the customer should not have to ask Pep Boys to "price match" Pep Boys' lowest advertised price.

105.    At all relevant times, Pep Boys charged the price differential to its customers who purchased the parts through its service department.

106.    The Plaintiff suffered ascertainable losses of money, including, but not limited to, the aforementioned price differential in the amounts of $55.55, $357.43, and $11.17, respectively, for each service visit.  The Plaintiff and the members of the putative Class are aggrieved consumers as a result of, but not limited to, the foregoing violations and losses.

<u>COUNT EIGHT</u>
(Breach of Contract)

107.    Plaintiff, on behalf of herself and all others similarly situated, incorporates by reference and realleges paragraphs 1-106.

108.    Pep Boys' Code and its Price Match Policy created binding contractual commitments on the part of Pep Boys that were accepted by the Plaintiff and the members of the putative Class and Plaintiff performed her contractual obligations because she paid the final bills.

109.    Pep Boys breached the Agreement by not providing the parts and/or accessories to the Plaintiff and the putative Class at its lowest advertised price.

110.    As a result of this breach of contract, The Plaintiff suffered ascertainable losses of money, including, but not limited to, the aforementioned price differential in the amounts of

$55.55, $357.43, and $11.17, respectively, for each service visit. The Plaintiff and the members of the putative Class are aggrieved consumers as a result of, but not limited to, the foregoing violations and losses.

## COUNT NINE
### (Unjust Enrichment)

111.    Plaintiff, on behalf of herself and all others similarly situated, incorporates by reference and realleges paragraphs 1-110.

112.    Pep Boys, through its wrongful conduct described above, has reaped substantial benefits at the expense of the Plaintiff and others similar situated. Pep Boys' profits would have been reduced, but for its wrongful and unlawful conduct.

113.    Accordingly, Pep Boys has been unjustly enriched by its wrongful and unlawful conduct. The Plaintiff suffered ascertainable losses of money, including, but not limited to, the aforementioned price differential in the amounts of $55.55, $357.43, and $11.17, respectively, for each service visit. The Plaintiff and the members of the putative Class are aggrieved consumers as a result of, but not limited to, the foregoing violations and losses. Pep Boys should not be allowed to retain the proceeds and benefits conferred upon them by the Plaintiff, a customer of Pep Boys, and the putative Class.

114.    In equity and good conscience, it would be unjust and inequitable to permit Pep Boys to enrich itself at the expense of the Plaintiff and the putative Class. Therefore, Pep Boys must disgorge its unjustly acquired profits and other monetary benefits resulting from its unlawful conduct and provide restitution to the Plaintiff and the putative Class.

## COUNT TEN
### (Jane and John Does 1-10 and XYZ ENTITIES 1-10)

115.    Plaintiff, on behalf of herself and all others similarly situated, incorporates by reference and realleges paragraphs 1-114.

116.    Defendants Jane and John Does 1-10 are individuals whose present identity are not yet known to Plaintiff, but whose actions caused an ascertainable loss, as described _supra_, to the Plaintiff and the members of the putative Class.

117.    XYZ Entities 1-10 are fictitious entities including, but not limited to, corporations, limited liability companies, partnerships, proprietorships, etc., whose present identities are not yet known, but whose actions caused an ascertainable loss, as described _supra_, to the Plaintiff and the members of the putative Class.

WHEREFORE the Plaintiff, on behalf of herself and all others similarly situated, demands Judgment against Pep Boys for COUNTS ONE through NINE inclusive as follows:

A.    For an order that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and that Plaintiff and her Counsel be appointed to represent the Class members;

B.    For compensatory damages;

C.    For punitive damages;

D.    For statutory damages;

E.    For treble damages under the CFA;

F.    For injunctive relief including, but not limited to, an order barring Pep Boys from continuing to violate various provisions of the CFA, Repair Regulations and TCCWNA, and from breaching future contracts and unjustly enriching itself at the expense of Plaintiff and Class Members;

Page **24** of **26**

G.      For restitution;

H.      For an accounting, as to the amount of money illegally obtained by the Defendant;

I.      For pre-judgment interest;

J.      For post-judgment interest;

K.      For attorneys' fees, expenses, and costs of this action; and

L.      For such other relief as the Plaintiff, and all others similarly situated, may be entitled to or as the Court deems equitable and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury of all claims so triable.

Date: August 1, 2017

/s/ Sean F. Forlenza
SEAN F. FORLENZA, ESQUIRE
The Law Office of Sean F. Forlenza, Esq.
1043 Hughes Drive
Hamilton, NJ 08690
(609) 638-0748

/s/ Carl J. Mayer
CARL J. MAYER, ESQUIRE
The Mayer Law Group
174 Nassau Street, Suite 414
Princeton, NJ 08542
(609) 921-0253

/s/ Ted M. Rosenberg
TED M. ROSENBERG, ESQUIRE
The Rosenberg Law Firm
321 New Albany Road
P.O. Box 97
Moorestown, NJ 08057
(856) 608-9999
(856) 235-8196 Fax

Attorneys for Plaintiff, Debra A. Silver, on behalf of herself and those similarly situated