**\*\*NOT FOR PUBLICATION\*\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

DEBRA A. SILVER,

                Plaintiff,

    v.

PEP BOYS-MANNY, MOE & JACK OF
OF DELAWARE, INC., JANE AND JOHN
DOES 1-100, and XYZ CORPORATIONS
1-10,

                Defendants.

_____

  :    Civil Action No. 17-00018 (FLW)(LHG)

  :

  :    **<u>OPINION</u>**

**<u>WOLFSON, United States District Judge</u>**:

Before the Court is the motion of Defendant Pep Boys-Manny, Moe, & Jack of Delaware, Inc. ("Pep Boys" or "Defendant") to dismiss the Second Amended Class Action Complaint of Plaintiff Debra A. Silver ("Plaintiff") for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff brings claims under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* ("CFA"), New Jersey Automotive Repair Regulations N.J.A.C. 13:45A-26C.1 *et seq.* ("Repair Regulations"), New Jersey's Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), and the common law of breach of contract and unjust enrichment, arising from Defendant's alleged practice of offering auto parts for sale at its retail locations at different prices than those available online on Defendant's website. Plaintiff only partially opposes Defendant's Motion, opposing dismissal of Counts II and IV, two CFA claims. Accordingly, Defendant's motion is granted as to Counts I, III, V, VI, VII, VIII, IX, and X as unopposed, and as to Counts II and IV for the reasons set forth below. All claims in Plaintiff's Second Amended Complaint are therefore dismissed with prejudice.

I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff initially filed a Class Action Complaint and a First Amended Class Action Complaint against Pep Boys in New Jersey Superior Court, Law Division, Mercer County. On January 3, 2017, Pep Boys removed the action to this Court. On January 24, 2017, Pep Boys filed two motions in lieu of an Answer: (i) a Motion to Compel Arbitration and Dismiss the Case, and (ii) a Motion to Dismiss the First Amended Class Action Complaint. Plaintiff opposed the motions on February 21, 2017, and Pep Boys filed its reply papers on February 27, 2017.

On April 17, 2017, this Court held a status conference and determined that limited discovery was necessary on the issue of whether Plaintiff received Pep Boys' Agreement to Arbitrate. The Court entered an Order on May 22, 2017, administratively terminating Pep Boys' Motion to Compel Arbitration and Motion to Dismiss without prejudice, with the right to re-file the motions after the completion of discovery on the arbitration issue. After obtaining discovery on the arbitration issue, Pep Boys withdrew its arbitration defense as to the named Plaintiff, but maintained its arbitration defense as to the unnamed members of the class. On July 20, 2017, therefore, Pep Boys filed only its renewed Motion to Dismiss the First Amended Class Action Complaint for Failure to State a Claim. In response, on August 1, 2017, Plaintiff filed the Second Amended Class Action Complaint and Jury Demand.

Plaintiff's Second Amended Complaint alleges that she visited Pep Boys' Princeton store, located at 3505 Brunswick Pike, West Windsor, New Jersey, for service and to buy automobile parts on three occasions: September 23, 2015; April 9, 2016; and May 15, 2016. On September 23, 2015, Plaintiff visited the Princeton Store to have her 2006 Kia Sedona repaired through the installation of new rear disc brake rotors. SAC, ¶¶ 23-24. Pep Boys offered to sell Plaintiff two ProStop Rear Disc Brake Rotors ("Brake Rotors") for $173.56 exclusive of labor, and Plaintiff

agreed to buy the parts from Pep Boys. *Id.* at ¶ 24. When Plaintiff later went to pick up her

vehicle and pay for the work done, on September 25, 2015, Pep Boys' Princeton service

department applied a "discount" that reduced the cost of the Brake Rotors from $173.56 to

$147.53. *Id.* at ¶¶ 25-26. One year later, on September 18, 2016, Pep Boys' website advertised

two ProStop Brake Rotors for $91.98, further reduced by a $23.00 promotion to $68.98, a price

lower than that which Plaintiff paid on September 25, 2015.[1] *Id.* at ¶ 26. Plaintiff supports this

allegation with a screenshot from Pep Boys' website taken on September 18, 2016.[2]

---

[1]    For the purposes of calculating her claimed losses, Plaintiff uses the pre-promotion figures from Pep Boys' website.

[2]    Plaintiff's First Amended Complaint explicitly stated that she or her attorney went on to the Pep Boys website on September 18 and 19, 2016, and allegedly observed a lower price for parts than she paid on September 25, 2015, April 11, 2016, and May 17, 2016. *See* ECF No. 1-3, First Amended Complaint, at ¶¶ 27, 32, 37, and p. 10, n. 12. The Second Amended Complaint now omits this language, but cites to the same purported screenshots of the Pep Boys website, which bear the dates "9/18/2016" and "9/19/2016" in the upper left hand corner. *See* ECF No. 25-1, Exs. C, F, and I, appended to Second Amended Class Action Complaint and Jury Demand.

As a general rule, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n. 6 (3d Cir. 2010). A limited exception to that rule exists "for documents that are '*integral to or explicitly relied* upon in the complaint.'" *Id.* (citation omitted). "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (quoting *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993)). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"); 2 Moore's Federal Practice § 12.34[2] (3d ed. 2014) ("court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the judge may take judicial notice.").

Here, the purported screenshots of the Pep Boys website are attached as exhibits to the Second Amended Complaint, and specifically incorporated by reference in the Second Amended Complaint's allegations. The Court therefore finds the screenshots to be integral to the Second Amended Complaint and a part of Plaintiff's pleading for all purposes. The Court considers the attached exhibits, and views the revised allegations of the Second Amended Complaint as in substantial conformance with the more explicit allegations of the First Amended Complaint, admitting that the basis of Plaintiff's belief that Pep Boys' website reflected different prices than those paid by Plaintiff at a Pep Boys' retail location from September 2015 through May 2016,

On April 9, 2016, Plaintiff visited the Princeton store's service department to have more work performed on her vehicle. On or about April 11, 2016, a representative from Pep Boys called Plaintiff and advised her of the work that needed to be done on her vehicle, including the installation of new parts, and Plaintiff agreed to buy the parts at the prices quoted. *Id.* at ¶ 30. When Plaintiff returned to the Princeton store to pick up her vehicle and pay for the work done, Pep Boys' service department applied a "discount" that reduced the costs of the parts previously quoted as follows: a) one ProCool New Water Pump for $106.41; b) two Front Struts for $454.23; c) two Front Strut Mounts for $210.91; and d) one Sway Bar Bushing for $13.82. On September 19, 2016, Pep Boys' website advertised the following prices for the same parts: a) one ProCool Water Pump for $85.99, minus a $21.50 promotion, for a total of $64.49; b) two Monroe OESpectrum Front Struts for $225.98, minus a $56.50 promotion, for a total of $169.48; c) two Front Strut Mounts for $103.98 ($51.99 each); and d) one MOOG Sway Bar Bushing for $11.99. *Id.* at ¶ 32. These prices were again lower than those which the Pep Boys service department ultimately charged the Plaintiff on April 11, 2016. Plaintiff again attaches to the Second Amended Complaint a series of screenshots of Pep Boys' website made on September 19, 2016, in support of her allegations.

Finally, on May 15, 2016, Plaintiff visited Pep Boys' Princeton store's service department to have work performed on her vehicle. Pep Boys offered to sell plaintiff a BWD Brake Light Switch ("Brake Light Switch") for $33.13, and Plaintiff agreed to buy the part from Pep Boys. *Id.* at ¶ 36. When Plaintiff returned to the Princeton store, on or about May 17, 2016,

_____

was a series of web searches conducted by Plaintiff or her counsel on September 18 and September 19, 2016, memorialized in the screenshots attached to the Second Amended Complaint. For the purposes of the present motion, however, it is sufficient for the Court to observe that the screenshots from September 18 and September 19, 2016, are taken as true reflections of the prices charged on Pep Boys' website on those dates.

the service department applied a "discount" that reduced the cost of the Brake Light Switch from $33.13 to $28.16. *Id.* at ¶ 37. On September 18, 2016, Pep Boys' website advertised a BWD Stoplight Switch for $16.99, minus a $4.25 promotion, for a total of $12.74. ECF No. 25-1, Exhibit I. This price was again lower than that which Plaintiff paid on May 17, 2016, at Pep Boys' Princeton store. *Id.* at ¶ 38. Once again a screenshot of Pep Boys' website from September 18, 2016, is attached to the Second Amended Complaint to corroborate Plaintiff's allegations.

On the basis of these incidents, Plaintiff alleges that Pep Boys' routinely charged customers who use its service department higher prices for auto parts than the lowest advertised prices for those parts available on Pep Boys' website. *Id.* at ¶ 28. Plaintiff alleges that this conduct was misleading because Pep Boys "Service Code of Ethics" ("Code"), an internal Pep Boys document that is publicly available on the internet, states that "[s]ervice pricing must conform with the Pep Boys printed retail prices or Mitchell pricing if no Pep Boys pricing is stated." *Id.* at ¶ 29. Finally, Plaintiff alleges that, despite a public Price Match Policy, promising to match any local competitor's advertised price, and a policy of offering in-store "discounts" on final bills, Pep Boys never disclosed to Plaintiff, either over the phone or in person, that the same auto parts that she was purchasing from the Princeton store were available on Pep Boys' website at different and lower prices. *Id.* at ¶¶ 41-43.

On the basis of these allegations, Plaintiff's Second Amended Complaint raises claims under the CFA, Repair Regulations, TCCWNA, and the common law of breach of contract and unjust enrichment, divided across numerous counts. On August 29, 2017, Defendant moved to dismiss all counts of the Second Amended Complaint with prejudice. Plaintiff filed a partial opposition on October 2, 2017, consenting to the dismissal of all claims except those raised in Counts II and IV. ECF No. 33, Pl. Opp. Br. at 7 ("Plaintiff now submits this Opposition Brief in

defense of Counts Two and Four from her Second Amended Class Action Complaint and Jury Demand and all other counts regarding same are hereby waived."). Defendant's Motion regarding Counts I, III, V, VI, VII, VIII, IX, and X is therefore granted as unopposed, and those counts are dismissed with prejudice.

In Count II, Plaintiff asserts that Defendant violated the CFA by making an affirmative misrepresentation. Plaintiff alleges that the language in Pep Boys' Code that "[s]ervice pricing must conform with the Pep Boys printed retail price or Mitchell pricing if no Pep Boys pricing is stated," which was publicly available on the internet, was an affirmative representation to Plaintiff, which was inherently deceptive and "misleads an average consumer into believing that the Pep Boys' service department was bound to give them Pep Boys' lowest advertised price for the part or accessory when that was not in fact the case" because lower prices were available online. *Id.* at ¶¶ 69-72. Plaintiff alleges that the ascertainable loss from this affirmative misrepresentation was the difference between the prices paid by Plaintiff for auto parts at the Pep Boys' Princeton store, on September 25, 2015; April 11, 2016; and May 17, 2016; and the prices advertised for those same auto parts on Pep Boys' website on September 18 and 19, 2016. *Id.* at ¶ 73.

In Count IV, Plaintiff asserts that Defendant violated the CFA by violating the Repair Regulations. Plaintiff alleges that Pep Boys violated N.J.A.C. 13:45A-26C.2(a)1, 13:45A-26C.2(a)5 and 13:45A-26C.2(a)13, by failing to disclose that prices for auto parts were different in Pep Boys' stores and on its website; applying discounts on customers' final bills which reinforced Plaintiff's impression that she was receiving Defendant's lowest advertised price for the parts; and disseminating its Code over the internet, which contained the untrue statement that "[s]ervice pricing must conform with the Pep Boys printed retail prices." *Id.* at ¶ 81. Plaintiff

again alleges that the ascertainable loss from these regulatory violations was the difference between the prices paid by Plaintiff for auto parts at the Pep Boys' Princeton store, on September 25, 2015; April 11, 2016; and May 17, 2016; and the prices advertised for those same auto parts on Pep Boys' website on September 18 and 19, 2016. *Id.* at ¶ 82.

Defendant's motion to dismiss Counts II and IV, the only remaining Counts of the Second Amended Complaint, is now before the Court.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation omitted). While Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the Complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the

"plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In sum, under the current pleading regime, to determine whether a plaintiff has met the facial plausibility standard mandated by *Twombly* and *Iqbal*, courts within the Third Circuit engage in a three-step progression. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the reviewing court "must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) (citations and quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (citations and quotations omitted). Finally, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (citations, quotations, and brackets omitted). This last step of the plausibility analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III. ANALYSIS

Both Plaintiff's Count II and Count IV claims arise under the CFA. The New Jersey CFA "provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace." *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 576, 25 A.3d 1103 (2011). To state a CFA claim, a consumer must plead (1) an unlawful practice; (2) an ascertainable loss; and (3) a causal relationship between the two. *Id.* at 577, 25 A.3d 1103. The Act prohibits affirmative acts and knowing omissions that rise to deceptive trade practices, as well as violations of regulations adopted by the Division of Consumer Affairs, made "in connection with

the sale or advertisement of any merchandise or real estate, or with the subsequent performance...." N.J.S.A 56:8–2.

There are three different categories of CFA violations: (1) "[a]n affirmative misrepresentation, even if unaccompanied by knowledge of its falsity or an intention to deceive"; (2) "[a]n omission or failure to disclose a material fact, if accompanied by knowledge and intent"; and (3) "'violations of specific regulations promulgated under the [CFA],'" which are reviewed under strict liability. *Monogram Credit Card Bank of Ga. v. Tennesen,* 390 N.J. Super. 123, 133, 914 *A.*2d 847 (App. Div. 2007) (internal citations omitted). Plaintiff in this action brings claims under both the first (Count II) and the third (Count IV) categories. With regard to the first category, "[w]hen the alleged consumer-fraud violation consists of an affirmative act, intent is not an essential element[,] and the plaintiff need not prove that the defendant intended to commit an unlawful act." *Cox,* 138 *N.J.* at 17-18, 647 A.2d 454. With regard to the third category, pursuant to *N.J.S.A.* 56:8-4, the Attorney General is authorized to promulgate rules and regulations necessary to accomplish the objectives of the CFA. In accord with this legislative grant of power, the Division of Consumer Affairs has promulgated administrative regulations giving effect to the CFA's provisions. "The parties subject to the regulations are assumed to be familiar with them, so that any violation of the regulations, regardless of intent or moral culpability, constitutes a violation of the [CFA]." *Cox,* 138 *N.J.* at 18-19, 647 A.2d 454. *N.J.A.C.* 13:45A-26C.2 governs automobile repairs and declares as "deceptive practices in the conduct of business of an automobile repair dealer" certain acts or omissions. The three provisions of the Repair Regulations at issue in this matter are N.J.A.C. 13:45A-26C.2(a)1, 13:45A-26C.2(a)5 and 13:45A-26C.2(a)13, which provide, in relevant part:

> . . . the following acts or omissions shall be deceptive practices in the conduct of the
> business of an automotive repair dealer, whether such act or omission is done by the

automotive repair dealer or by any mechanic, employee, partner, officer of member of the automotive repair dealer:

1. Making or authorizing in any manner or by any means whatever any statement, written or oral, which is untrue or misleading, and which is known, or by which the exercise of reasonable care should be known, to be untrue or misleading.

5. Making deceptive or misleading statements or false promises of a character likely to influence, persuade or induce a customer to authorize the repair, service or maintenance of a motor vehicle.

13. Any other unconscionable commercial practice prohibited pursuant to N.J.S.A. 56:8–1 et seq.

N.J.A.C. § 13:45A-26C.2(a)1, 5, 13.

In its motion, Defendant Pep Boys argues that Counts II and IV of the Second Amended Complaint must be dismissed because (a) Plaintiff has failed to plead any unlawful practice by Pep Boys; (b) Plaintiff has failed to plead any ascertainable loss by Plaintiff; and (c) Plaintiff has failed to plead causation. Defendant's arguments apply equally to Plaintiff's Count II affirmative representation claim and Plaintiff's Count IV regulatory violation claim. All of Defendant's arguments for dismissal return to the same basic facts: even accepting, *arguendo*, that an action under the CFA may be maintained against a retailer for charging different prices at its physical locations and on its website, Plaintiff has failed to allege that the auto parts she purchased from Pep Boys' Princeton store were in fact offered for different and lower prices on Pep Boys' website *at the time she purchased the parts*. Instead, Plaintiff alleges one set of prices on three dates of in-store purchases in September 2015, April 2016, and May 2016, and another set of allegedly lower prices published online on two *subsequent* dates in September 2016.

The Court agrees that this pleading deficiency is fatal to Plaintiff's claims of fraud, however conceived under the CFA or its implementing regulations. The heart of Plaintiff's theory of liability is that Defendant violated the CFA by charging one price for a product through its physical retail location and another through its web portal. Taking Plaintiff's allegations as

true for the purpose of the motion to dismiss, there are simply no factual allegations supporting this contention that could give rise to an unlawful practice or an ascertainable harm caused thereby. As further explained below, Plaintiff therefore fails to state each of the elements of a CFA claim, and Counts II and IV of the Second Amended Complaint will be dismissed with prejudice.[3]

A. Unlawful Practice

Unlawful practice or conduct under the CFA is defined as: "use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretenses, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any

---

[3] Defendant moves to dismiss Plaintiff's Second Amended Complaint with prejudice. The Court finds that dismissal with prejudice is appropriate, where, as here, Plaintiff took the opportunity to amend her Complaint after having the opportunity to review Defendant's initial, January 2017 motion to dismiss the First Amended Complaint, which outlined Defendant's core arguments for dismissal of Plaintiff's claims, which Defendant again raises in its present, August 2017 motion, including failure to plead unlawful conduct, failure to plead ascertainable loss, failure to plead causation, and failure to state a claim for any regulatory violation. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007) ("in ordinary civil litigation it is hardly error for a district court to enter final judgment after granting a Rule 12(b)(6) motion to dismiss when the plaintiff has not properly requested leave to amend its complaint. This holding does not impose any undue burden on civil plaintiffs, nor does it risk plaintiffs suffering final judgment on the basis of a technical pleading defect. Here, [plaintiff] was not caught unaware by the Court's entry of judgment, as it had notice of [defendant's] motion and every opportunity to amend its complaint beforehand."). *See also Ghaffari v. Wells Fargo Bank NA*, 621 F. App'x 121, 125 (3d Cir. 2015) (affirming dismissal of plaintiff's amended complaint "with prejudice" and holding that the district court "was under no obligation" to grant plaintiff another opportunity to amend his amended complaint where "he had already been given an opportunity to amend his complaint after defendant filed its motion to dismiss his original complaint"). In short, despite having the opportunity to supplement her factual allegations to address the deficiencies identified by Defendant's first motion, Plaintiff did not do so in her Second Amended Complaint. Moreover, when Defendant again raised those deficiencies in its second motion, Plaintiff did not seek leave of the Court to amend in response. The Court therefore, for the reasons set forth, *infra*, dismisses all claims with prejudice. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 230 (3d Cir. 2011) ("A district court may enter final judgment after granting a Rule 12(b)(6) motion to dismiss when the plaintiff has not properly requested leave to amend its complaint.").

material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J.S.A. 56:8-2. An unconscionable commercial practice "[n]ecessarily entails a lack of good faith, fair dealing, and honesty," and "[t]he capacity to mislead is the prime ingredient of all types of consumer fraud." *Cox,* 647 A.2d at 462. Where the practice alleged is a misrepresentation, "[t]he misrepresentation has to be one which is material to the transaction ... made to induce the buyer to make the purchase." *Gennari v. Weichert Co. Realtors*, 148 *N.J.* 582, 607, 691 *A.*2d 350 (1997). "Mere consumer dissatisfaction does not constitute consumer fraud." *In re Van Holt*, 163 F.3d 161, 168 (3d Cir. 1998).

In Count II, Plaintiff alleges that Defendant's unlawful practice was the "posting" of Pep Boys' Code, "promot[ing]" and "affirmatively represent[ing]" that its "[s]ervice pricing must conform with the Pep Boys printed retail price or Mitchell pricing if no Pep Boys pricing is stated," when in fact Pep Boys charged different prices for auto parts sold from its physical service center than those listed on its website.[4] In Count IV, Plaintiff alleges that the unlawful practice was the violation of the Repair Regulations.

---

[4] The Court notes that Defendant advances several arguments that would be appropriate on summary judgment concerning the factual context of to whom the Code was provided — Defendant alleges it was directed to Pep Boys' employees and was sent outside the company only to Pep Boys' investors, not customers — and the meaning of the terms "service pricing" and "printed retail price" as used in the Code — Defendant contends that references to "pricing" in the document refer only to the pricing of labor, not auto parts. In support of the former contention, Defendant cites only to paragraph 21 of the Code itself, which is attached as an exhibit to the Complaint, which states that "[n]on-compliance may result in disciplinary action, up to and including discharge." ECF No. 27-2, Def. Br., p. 21. Defendant likely means to imply that because the Code threatens disciplinary action, it is directed to employees. Evidence of the critical fact of to whom the Code was disseminated, however, is absent from the documents attached to and incorporated into the Complaint. In support of the latter contention, that "service pricing" refers only to the price of labor, Defendant again cites only to the Code itself, and notes

The flaws in Plaintiff's pleadings are immediately evident. Firstly, even accepting Plaintiff's interpretation of Pep Boys' Code — which Defendant strenuously disputes — according to Plaintiff's own allegations, the prices she paid at the Pep Boys' Princeton store were indeed different than those listed on Pep Boys' website *between four and twelve months later*. Plaintiff has pointed to no authority, and there is in fact no law, which requires Defendant to charge the same prices for products, sold through different distribution channels, at different times, in the absence of some specific representation promising to do so. As the New Jersey Appellate Division has observed, under the CFA, a defendant's "failure . . . to inform its customers of specific prices" or maintenance of "a variable pricing policy" "only becomes relevant when juxtaposed against [the defendant's] advertising." *Leon v. Rite Aid Corp.*, 340 N.J. Super. 462, 472, 774 A.2d 674, 680 (App. Div. 2001). In *Leon*, for example, the defendant was alleged to have promised the "best and lowest" pricing available to all customers at the point of sale, when in fact it operated a two-tier pricing structure where customers were charged prices different than defendant's list prices "for reasons that would be unsuspected by the average consumer." *Id.* Here, by contrast, reading Pep Boys' Code, as Plaintiff would, to mean that prices in-store must match prices published anywhere else including on Pep Boys' website, the Amended Complaint nevertheless fails to allege that Pep Boys ever represented that prices in-store would match prices published anywhere else *at any time in the future*. Indeed, it is doubtful

---

that the provision referring to "service pricing" does not use the word "parts," while the word "parts" is used elsewhere in the code. Although Defendant appears to be making a variant of an *expressio unius est exclusion alterius* argument, the presence of the word parts elsewhere in the code and its absence in the disputed provision is not alone sufficient to prove that the undefined term "service" means labor at the stage of a motion to dismiss, where Plaintiff's allegations are taken as true. Each of these questions could presumably be resolved through evidence elicited during discovery. The Court declines to consider these arguments, however, which rely on facts outside the pleadings, as Plaintiff's Second Amended Complaint must be dismissed on other grounds.

that even if it were made, any such representation by Pep Boys to match future prices would be actionable under the CFA as more than mere puffery. *In re Toshiba Am. HD DVD Mktg. and Sales Practice Litig.*, No. 08-939, 2009 WL 2940081, at *9-10 (D.N.J. Sept. 11, 2009) (dismissing CFA claim and holding that statement that something is the "best" "For Today, Tomorrow and Beyond" is puffery); *see also Kuzian v. Electrolux Home Prod., Inc.*, 937 F. Supp. 2d 599, 615 (D.N.J. 2013) (citing *Rodio v. Smith,* 123 N.J. 345, 587 A.2d 621 (1991)) (advertising puffery is not deemed to be a misrepresentation of fact or actionable for fraud under New Jersey law).

Furthermore, there is no law even requiring a retailer to charge the same prices for the same product, sold through the same distribution channel, at the same time. *See, e.g.*, *Yingst v. Novartis AG*, 63 F. Supp. 3d 412, 416 (D.N.J. 2014) (finding no unlawful conduct to support a CFA violation where defendant simultaneously sold the identical product, packaged differently, for different prices); *Boris v. Wal-Mart Stores, Inc.*, 649 F. App'x 424, 425 (9th Cir. 2016) (the "fatal flaw" in plaintiff's complaint under, *inter alia*, the NJCFA, was "his assertion that the mere fact of the proximate presentation" of two identical products in different packages at different prices constituted a violation). A focus of New Jersey's law in these "variable pricing" cases has been whether the defendant made public, or instead attempted to conceal the different prices for the same good. For example, the New Jersey Supreme Court held that a plaintiff stated a CFA claim where he alleged that a defendant restaurant "increase[ed] the price charged to a customer for the same brand, type, and volume of beverage in the course of the customer's visit to the restaurant, without notifying the customer of the change." *Dugan v. TGI Fridays, Inc.*, 231 N.J. 24, 35, 171 A.3d 620, 626 (2017). Again, here, by contrast, Plaintiff actually alleges that Defendant's different in-store and online prices were publicly available, eliminating the potential

for the fraud found to be alleged in *Dugan*. In sum, Plaintiff has failed to identify a single case in which the CFA's reach has been extended to cover transactions in which different prices are publicly offered for the same good, through different distribution channels, at different times; this Court declines to be the first to do so.

Secondly, for the Code to constitute an affirmative misrepresentation actionable under the CFA, it had to be "material to the transaction ... made to induce the buyer to make the purchase." *Gennari*, 148 *N.J.* at 607. Plaintiff has failed to allege that the Code was provided to her in conjunction with her purchase of auto parts from Pep Boys' Princeton store, that she read the Code before making her purchase, or even that she was aware of the Code's existence before contemplating litigation in this matter. The same is true of Plaintiff's allegations concerning Defendant's alleged Price Match Policy. Plaintiff alleges that the Price Match Policy was publicly available on the internet, and that, therein, Pep Boys offered to match the advertised or every-day price of any local competitor. SAC, ¶ 41. Even accepting that this was in some way false — which no allegations in the Second Amended Complaint suggest it was — none of Plaintiff's transactions are alleged to have involved any mention of competitor prices. In the absence of any allegations concerning competitor prices, the Price Match Policy, even if containing misrepresentations, could not possibly have been material to Plaintiff's purchases of auto parts. Thus, whatever representation Pep Boys may have made in the Policy or the Code, it is not alleged to have been "in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance...," as required to be actionable under the CFA. N.J.S.A 56:8–2.

Lastly, Plaintiff's allegations do not satisfy any of the particular provisions of the Repair Regulations, which Plaintiff claims have been violated. Plaintiff has failed to allege that Pep

Boys, through the Code or otherwise, made any statement that was "untrue or misleading." 13:45A-26C.2(a)1. For the Code's statement that "[s]ervice pricing must conform with the Pep Boys printed retail price or Mitchell pricing if no Pep Boys pricing is stated," to be untrue or misleading in the circumstances alleged in the Second Amended Complaint, Plaintiff would have to allege that service pricing did not conform to Pep Boys' printed retail price. Even accepting Plaintiff's equation of "service pricing" with the price of auto parts sold at service centers and of "printed retail price" with the price for such parts published on Pep Boys' website — assumptions that Defendant strenuously contests — Plaintiff has not alleged that these prices were ever not "in conformance" at a given time, such that asserting their conformance would be false or misleading. The only allegations are that these prices were not in conformance on different dates, months apart.

Plaintiff also fails to allege that Defendant made any "misleading statements or false promises of a character likely to influence, persuade, or induce a customer to authorize the repair, service or maintenance of a motor vehicle." 13:45A-26C.2(a)5. Plaintiff does not allege that she was aware of the Code *before* she authorized the repairs and auto parts purchases at Pep Boys' Princeton store. There are therefore no allegations that the Code, or any other representations by Pep Boys could have possibly been of a character to influence, persuade, or induce her to any action. The Court also notes that Plaintiff's allegations concerning Pep Boys' Price Match and discount policies similarly do not fall within this Repair Regulation. Plaintiff fails to assert that the Price Match was misleading, because, according to Plaintiff's own allegations, the policy provided for the matching of competitor's prices, not Pep Boys' own prices through other distribution channels. SAC, ¶ 41. Plaintiff simply interprets this unambiguous statement, without support, to mean that Pep Boys would match its own prices

published elsewhere. *Id.* at ¶ 42. Although this may be Plaintiff's subjective belief, Plaintiff has not alleged that anything in the Price Match Policy itself was untrue or misleading, or indeed, that she ever attempted to utilize it. Indeed, the particular version of the Price Match Policy referred to in the Second Amended Complaint could not possibly have influenced Plaintiff, because it was not issued until June 2016, *after* Plaintiff's final purchase in May 2016. ECF No. 27-3, p. 4. Furthermore, the in-store discounts which Defendant is alleged to have given are also not alleged to have been misleading or false promises by any definition. Plaintiff was in fact given the discounts promised, the discounts were not accompanied by any statement that there was no better price offered elsewhere, and her assumptions to the contrary, on the basis of the discounts being offered, are not supported by any facts.

Finally, Plaintiff has failed to plead "[a]ny other unconscionable commercial practice." 13:45A-26C.2(a)13. "Though an unconscionable commercial practice 'is an amorphous concept obviously designed to establish a broad business ethic,' the term is not without limits." *Ciser v. Nestle Waters N. Am. Inc.*, 596 F. App'x 157, 161 (3d Cir. 2015) (quoting *Cox,* 647 A.2d at 462). "The standard of conduct that the term 'unconscionable' implies is lack of 'good faith, honesty in fact and observance of fair dealing.'" *Id.* (internal citations omitted). Most importantly, the New Jersey Supreme Court has instructed that "[t]he *capacity to mislead is the prime ingredient* of all types of consumer fraud." *Cox,* 647 A.2d at 462 (quoting *Fenwick v. Kay Am. Jeep, Inc.,* 72 N.J. 372, 378, 371 A.2d 13 (1977) (emphasis added)). Plaintiff has failed to plead that Pep Boys' Code had the capacity to mislead, because she has not pleaded that she read or was aware of the Code before making her purchases. The allegations concerning the Price Match Policy and in-store discounts are similarly inadequate. Plaintiff asserts that these "reinforced Plaintiff's impression that she was receiving the lowest advertised price for the parts," but fails to plead

why this would be the case, since neither the Price Match Policy nor the in-store discounts are

alleged to have represented to Plaintiff that the price offered was the lowest advertised by Pep

Boys, or that there were not lower prices offered elsewhere. SAC, ¶ 81.

The Second Amended Complaint therefore fails to plead any unlawful practice which

could serve as the predicate for a violation of the CFA.

B. Ascertainable Loss – Counts II & IV

To plead an "ascertainable loss," Plaintiff must "demonstrate a loss attributable to

conduct made unlawful by the [NJ]CFA," which is "quantifiable or measurable," and not merely

"hypothetical" or "speculative." *Thiedemann v. Mercedes—Benz USA, LLC*, 183 N.J. 234, 246–

52, 872 A.2d 783 (2005). "In . . . misrepresentation . . . out-of-pocket loss . . . will suffice to

meet the ascertainable loss hurdle." *Id.* at 248. Violations of *N.J.A.C.* 13:45A–26C.2 (the Repair

Regulations), like any other CFA violation, still require plaintiffs to plead ascertainable loss. *See,

e.g.*, *Grant v. Dan's Auto Body, L.L.C.*, No. A-3462-15T2, 2017 WL 3091664, at *3 (N.J. Super.

Ct. App. Div. July 21, 2017) (rejecting plaintiff's allegations that defendants committed

deceptive practices pursuant to *N.J.A.C.* 13:45A–26C.2, because, *inter alia*, "plaintiff failed to

prove an ascertainable loss.").

Here, the temporal divide between the online prices Plaintiff asserts were offered in

September 2016 and the in-store prices Plaintiff is alleged to have paid in September 2015

through May 2016, renders her unable to plead ascertainable loss. Plaintiff claims that the proper

measure of loss is the difference between the prices offered and the prices paid, but there are no

allegations of prices, other than those that Plaintiff actually paid, which were offered at the times

she purchased auto parts from Defendant. Plaintiff's allegations concerning prices after her

purchases are inadequate, because there is no allegation in the Second Amended Complaint, and

indeed there could not be an allegation, that Defendant represented that the prices offered to Plaintiff at its Princeton store were the best and lowest that *would ever be offered at any point in the future*. Plaintiff therefore has not pleaded any measure of loss that is not purely hypothetical and speculative — based on what Pep Boys' online prices may have been at the time she made in-store purchase,s rather than what those prices in fact were.

C. Causation

Finally, "[t]he 'causation' provision of *N.J.S.A.* 56:8-19 requires plaintiff to prove that the unlawful consumer fraud caused his [or her] loss." *Cox,* 138 N.J. at 23, 647 A.2d 454. As discussed above, the primary thrust of Plaintiff's allegations concerns Pep Boys' Code, but, glaringly, Plaintiff does not plead that she was aware of the Code prior to making her purchases. Moreover, because there are no allegations of an actually untrue or misleading representation, or any other unlawful conduct of Pep Boys, and no allegations supporting ascertainable loss, causation is necessarily absent.

In opposition, Plaintiff suggests that she may be able to establish the elements of her claim through discovery, admitting that on the basis of Plaintiff's present allegations, it is possible that, on the dates of Plaintiff's purchases, the prices on Defendant's website for the auto parts that Plaintiff purchased were higher, the same, or lower than those reflected in Plaintiff's exhibits from September 2016. ECF No. 33, p. 15. From this, Plaintiff inexplicably concludes that she has met her pleading burden because her claims are "plausible" "in two out of three scenarios." *Id.* The law in this Circuit is well-established, however, that Plaintiff "may not attempt to use discovery as a fishing expedition . . . to seek out the facts necessary to establish a legally adequate complaint." *White v. Hon Co.*, 520 F. App'x 93, 95 (3d Cir. 2013) (citing *Ranke v. Sanofi–Synthelabo Inc.,* 436 F.3d 197, 204 (3d Cir. 2006)). In short, according to the

allegations of the Second Amended Complaint, and Plaintiff's representations in briefing, even Plaintiff is unaware if she suffered any ascertainable loss in this matter and if any such loss was caused by any unlawful act of Defendant Pep Boys. Faced with a complete dearth of acts or representations contemporaneous with her September 2015, April 2016, and May 2016 auto parts purchases, Plaintiff instead alleges injury from a Service Code of Ethics, which she is not alleged to have encountered prior to the litigation, a June 2016 edition of Pep Boys' Price Match Policy, on which she could not possibly have relied, and September 2016 screenshots of Pep Boys' website, which make no representations concerning prices from prior months and years. If Plaintiff could plead reliance, or even relevance to the transactions alleged to have been affected by Defendant's fraud, of this after-the-fact assemblage of policies and advertisements, she no doubt would have done so. Defendant previewed the arguments in its present motion in its original, January 2017 motion to dismiss Plaintiff's First Amended Complaint. Plaintiff filed the Second Amended Complaint in this matter in August 2017, with full knowledge of the arguments in Defendant's original motion, and, yet, has failed to address them. Plaintiff's demonstrated inability to allege the most basic facts, which should be within her knowledge, in support of her claim, coupled with the structural flaw in Plaintiff's legal theory — that Plaintiff has identified no law supporting the proposition that the charging by a defendant of variable prices for the same goods in the absence of some misrepresentation or deception is actionable under the CFA — makes dismissal with prejudice the appropriate outcome here. *See, supra*, n. 3.

D.  Class Action Claims

The Court having found that Plaintiff has failed to state a claim because she has not alleged that she ever purchased auto parts at one of Defendant's retail locations *at the time when such parts were being advertised for lower prices on Defendant's website*, there is no longer a

live case or controversy in this putative class action and, dismissal, of the entire action, including the class claims is appropriate. "The doctrine of mootness requires that 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Brown v. Philadelphia Hous. Auth.*, 350 F.3d 338, 343 (3d Cir. 2003) (quoting *New Jersey Turnpike Authority v. Jersey Cent. Power,* 772 F.2d 25, 31 (3d Cir. 1985)). "Mootness has two aspects: (1) the issues presented are no longer live, or (2) the parties lack a cognizable interest in the outcome." *Id.* "In the class action context, special mootness rules apply. 'Once a class has been certified, mooting of the class representative's claims does not moot the entire action because the class acquires a legal status separate from the interest asserted by its named plaintiff.'" *Id.* (quoting *Lusardi v. Xerox Corp.,* 975 F.2d 964, 974 (3d Cir. 1992) (internal quotations omitted)). "Litigation may continue because the stake of other class members is attributed to the class representative. However; when claims of the named plaintiffs become moot before class certification, dismissal of the action is required.'" *Id.*

Here, the fact that Plaintiff has not successfully alleged that she was ever the victim of the alleged differential pricing scheme, and her individual claims have been dismissed, Plaintiff no longer has a cognizable interest in the outcome of her putative class action. Because the putative class in this matter has not been certified, dismissal of this action is required.

IV. CONCLUSION

Accordingly, for the foregoing reasons, Defendant's motion is granted, and Plaintiff's Second Amended Complaint is dismissed with prejudice.


Date:   March 29, 2018                                    */s/ Freda L. Wolfson*
                                                          FREDA L. WOLFSON, U.S.D.J.